UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| PATRICK BOWLING, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6: 07-309-DCR |
| ) | |
| V. ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | **MEMORANDUM OPINION** |
| of Social Security, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment filed by Plaintiff Patrick Bowling ("Bowling") and Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). [Record Nos. 6 and 9] Through this action, Bowling seeks to reverse the decision of an administrative law judge ("ALJ") concluding that he was not entitled to Supplemental Security Income ("SSI"). However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Bowling.

**I.    BACKGROUND**

Bowling filed his application for SSI on May 2, 2005. His claim was denied initially and upon reconsideration. Thereafter, Bowling requested a hearing before an ALJ. On January 22, 2007, an administrative hearing was conducted before ALJ Ronald M. Kayser in Hazard,

Kentucky. During the hearing, the ALJ heard testimony from Bowling and Joyce P. Forrest, a vocational expert. Thereafter, the ALJ issued a decision denying benefits to him. [Transcript (Tr.), pp. 17-26] The ALJ concluded that Bowling retained the residual functional capacity ("RFC") to perform a limited range of medium work. [Tr., p. 25] Bowling's request for review was denied by the Appeals Council on July 10, 2007. [Tr., pp. 6-8]

At the time of the hearing, Bowling was 43 years old with a tenth grade education. [Tr., p. 274] He has past work experience as a mechanic. He claims disability due to a variety of impairments, including diabetes, back pain, numbness in the hands and depression. [Tr., pp. 272-97] After a careful review and evaluation of the medical evidence of record and the testimony at the hearing, the ALJ found that Bowling retained the RFC to perform medium exertional work where he can lift and/or carry twenty-five pounds frequently and fifty pounds occasionally, stand/sit about six hours in an eight hour day, perform unlimited pushing/pulling, other than as shown for lifting and/or carrying. The ALJ also determined that the Bowling needed to avoid concentrated exposure to extreme cold or heat; avoid concentrated exposure to vibration; and avoid hazards such as machinery and dangerous heights. [Tr., p. 22]

With regard to Bowling's mental RFC, the ALJ found that Bowling had moderate limitations in his ability to understand and remember detailed instructions, maintain attention and detailed instructions, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length or rest periods, interact appropriately with the general public, and get along with co-workers or

peers without distracting them or exhibiting behaviorial extremes. [Tr., p. 22] Accordingly, the ALJ concluded that Bowling was not disabled as defined in the Social Security Act and regulations. [Tr., pp. 25-26]

## II.     LEGAL STANDARD

A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). First, a claimant must demonstrate that he is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, a claimant must show that he suffers from a severe impairment. 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months, which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's residual functional capacity ("RFC") and relevant past work to determine if he can do past work. If he can, he is not disabled. 20 C.F.R. § 416.920(f).

Under the fifth step of this analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education and past work experience

to determine if he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Wyatt v. Sec'y of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (quotes and citations omitted).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lashley v. Sec'y of Health and Human Servs*, 708 F.2d 1048, 1053 (6th Cir. 1983). While significant deference is accorded to the ALJ, the standard employed in these cases does not permit a selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must be taken into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Garcia v. Sec'y of Health and Human Servs.*, 46 F.3d 552, 555 (6th Cir. 1995); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

In determining whether the ALJ's opinion is supported by substantial evidence, courts may not "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). It is the job of the ALJ to make credibility findings after listening to testimony, observing the claimant's demeanor, and evaluating the testimony in light of the written evidence. Notably, credibility determinations are particularly within the province of the ALJ and are "to be given great weight." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

**III.    DISCUSSION**

Bowling raises a number of issues through this action. Specifically, he alleges that: (1) the ALJ acted as his own medical expert; (2) the ALJ failed to properly consider the opinions of the state agency medical and psychological consultants; (3) the ALJ failed to properly consider his allegations of pain; and (4) the ALJ erred in failing to provide a more detailed hypothetical question to the VE.

With respect to the assertion that the ALJ erred by acting as his own medical expert, Bowling argues that the ALJ failed to consider his testimony and failed to take into account the medical reports from his treating physician, Dr. Roy Varghese. The ALJ provided a thorough recitation of the evidence and provided a compelling argument that Bowling was not disabled. [Tr., pp. 17-26] After a review of the record, the ALJ found that Bowling suffered from the severe impairments of diabetes mellitus II and controlled borderline intellectual functioning. However, he did not find that these impairments met or equaled one of the Listings.

In reviewing the medical evidence of record, the ALJ noted that evidence demonstrated that Bowling was admitted to Mary Breckinridge Hospital on January 29, 2005, for complaints of chest pain. At that time, he was diagnosed with chest pain and new onset diabetes. The health care professionals advised him to stop consuming alcoholic beverages.

The ALJ further noted that on July 26, 2006, Jeanne Bennett, Ph.D., a licensed psychologist, performed a consultative psychological examination of Bowling. The ALJ indicated that Bowling informed Dr. Bennett that he did not have a history of any inpatient or outpatient mental health treatment, smoked a pack of cigarettes a day for 27 years, and used to drink 12 to 14 beers a day. The ALJ further noted that Dr. Bennett concluded that Bowling was oriented in all spheres and in the area of memory. Specifically, she stated that he could recall three of three words immediately. Dr. Bennett diagnosed Bowling with alcohol abuse in full remission, depressive disorder and possible borderline intellectual functioning.

The ALJ also considered the medical evidence from Bowling's treating physician, Dr. Varghese, who treated him during the period from January 4, 2006, through January 4, 2007, for

diabetes. The ALJ specifically noted that Dr. Varghese indicated that Bowling was doing very well and that he had normal vital signs and normal straight leg raising. Additionally, the ALJ pointed out that Dr. Varghese found that Bowling's blood pressure was controlled.

In finding that Bowling was not disabled, the ALJ relied primarily on the findings of Laura Cutler, Ph.D., the state agency physician. The ALJ noted that after reviewing the record, Dr. Cutler adopted the findings from the February 21, 2003, hearing decision and determined that Bowling had mild deficiencies in activities of daily living, moderated deficiencies in social functioning, moderate deficiencies in concentration, persistence or pace resulting in failure to complete tasks in a timely manner, and no evidence of decompensation in work or work-like settings or evidence of the presence of the "C" criteria. [Tr., pp. 221-238]

Bowling also claims that the ALJ failed to properly consider the opinions of the state agency medical and psychological consultants. With respect to this issue, the Sixth Circuit has noted, "[s]tate agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence." *Hoskins v. Comm'r of Soc. Sec.*, 106 Fed. Appx. 412, 415 (6th Cir. 2004). Here, the ALJ found that Dr. Cutler's findings were supported by the objective medical evidence of record and thus relied on her opinions in concluding that Bowling was not disabled. Thus, the ALJ clearly did not "act as his own medical expert," as Bowling claims; rather, his conclusions were based upon the opinions of *actual* medical experts.

Bowling further suggests that the ALJ failed to properly consider his complaints of pain. In general, a claimant's subjective complaints of pain may be sufficient to support a claim of

disability. *See Glass v. Sec'y of Health Ed. and Welfare*, 517 F.2d 224, 225 (6th Cir. 1975). However, in evaluating the claimant's allegations, an ALJ should look to the medical evidence to determine if the complaints of pain have an objective basis inasmuch as reference to medical evidence is helpful in making credibility determinations concerning such claims. "[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).

To support a claim for Social Security benefits, there must be medical signs and findings, established by medically acceptable or clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological or psychological abnormalities which could reasonably be expected to produce pain. 42 U.S.C. § 423(d)(5)(A). In addition, the Sixth Circuit has prescribed an analytical framework for evaluating subjective complaints of pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

In the present case, Bowling alleges disability due to pain in his back, hands and legs. He also alleges that he suffers from depression. In evaluating Bowling's allegations, the ALJ examined the objective medical evidence and concluded that there was no objective medical

evidence to support his allegations that these problems constitute severe impairments. Specifically, the ALJ concluded that:

> [a]lthough the claimant alleged pain in his back, hands and legs as a disabling complaint, the undersigned finds it to be a non-severe impairment. On January 4, 2007, the claimant was noted to have negative straight leg raise. Furthermore, the preponderance of evidence did not establish any evidence of muscle loss or nerve damage and there is no magnetic resonance imaging or x-ray evidence to support his allegations. The claimant also admitted at the hearing that he has continued to perform odd and end jobs as a mechanic, which was evidence by the condition of his hands (calluses). Additionally, although the claimant alleges depression as a disabling complaint, the evidence indicates it would be a non-severe impairment. The claimant has never had inpatient or outpatient psychiatric treatment and he takes no psychotropic medications. The record also indicates he has been diagnosed with alcohol dependency. Claimant had an elevated gamma-glutamyltransferase (GGT) score of 178 on July 29, 2006, which when compared to the lab range of 0-65 means that he had acute alcohol intoxication per DSM-IV criteria. Claimant insisted that he has been in total remission since 2004.

[Tr., pp. 20-21]

The Sixth Circuit has repeatedly noted that "[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence." *Cruse*, 502 F.3d at 543 (quoting *Walters*, 127 F.3d at 531). Here, objective medical evidence confirms that Bowling suffers *some* degree of pain as a result of his impairments. However, the ALJ's findings are supported by the fact that the medical evidence of record fails to demonstrate the Bowling suffers from disabling pain.

Moreover, Bowling's daily activities undermine his allegations of disabling pain. In discussing this point, the ALJ noted that:

> [a]fter considering the evidence of record, the undersigned finds that the claimant was credible regarding the general nature of his impairments that were established by the medical evidence of record. The claimant was not credible in his assertion that his combined impairments preclude him from all full-time work activities, or

>activities with greater limitations than set forth in the residual functional capacity. Although the claimant reports that he basically does nothing but sit and watch television or sit on his porch, he appeared at the hearing with callused hands. When questioned regarding work activity, he did admit that he works 'some odd and end jobs' and works as a mechanic for cash payments. Although he has been advised to follow a diet due to his diabetes mellitus, he testified at the hearing that he does not. He alleges problems breathing, but continues to smoke one pack of cigarettes a day. He also said he is supposed to wear special shoes due to his diabetes, but he cannot get them. However, he can afford to smoke a pack of cigarettes per day.

[Tr., p. 24] Accordingly, the ALJ properly discounted Bowling's allegations of pain as they conflicted with the medical reports and other evidence in the record.

Bowling also argues that the ALJ erred in failing to provide a more detailed hypothetical question to the VE. Specifically, Bowling argues that the hypothetical on which the ALJ relied is not supported by substantial evidence because it failed to contain adequate mental limitations and failed to contain the physical restrictions suggested by Dr. Varghese.

In *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235 (6th Cir. 2002), the Sixth Circuit reversed the Commissioner's denial of benefits because a faulty hypothetical question did not accurately describe the claimant's abilities. As the Court noted, hypothetical questions posed to VEs for the purpose of determining whether a claimant can perform other work should be a complete and accurate assessment of the claimant's physical and mental state which should include an "accurate portrayal of her individual physical and mental impairments." *Id.* at 239; *Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987); *Myers v. Weinberg*, 514 F.2d 293, 294 (6th Cir. 1975).

Where a hypothetical question fails to describe accurately the claimant's physical and mental impairments, the defect can be fatal to the VE's testimony and the ALJ's reliance on it.

An ALJ, however, is not required to restate verbatim a medical report to a VE in order to accurately state a claimant's relevant impairments. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Thus, the central question is not whether the hypothetical question posed to the VE recounts all of the medical findings, impairments and conditions, but whether it is a fair, complete and accurate summation regarding the claimant's abilities and overall mental and physical state, based upon the available evidence and testimony. *See Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2001); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Felinsky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Davis v. Sec'y of Health & Human Services*, 915 F.2d 186, 189 (6th Cir. 1990); *Higgs*, 880 F.2d at 863; *Varley*, 820 F.2d at 779. Further, merely because a claimant was diagnosed with a condition does not mean such diagnoses must be included in a hypothetical. The medical evidence must support such a diagnosis and must support a finding that the diagnosis causes functional debilitation. *Id*.

In *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629 (6th Cir. 2004), the Sixth Circuit addressed the issue whether the hypothetical to the VE was deficient because it did not list all of a claimant's ailments. The court held that

> there is some confusing language in *Howard* that could conceivably be viewed as requiring that hypothetical questions include lists of claimants' medical conditions. However, we conclude that, given the facts present in *Howard*, that language is not part of its holding, nor can it be so construed if *Howard* is to be read to be consistent with the holdings of our prior decisions.

*Id*. at 631-32. Thus, an ALJ is *not* required to present an exhaustive list of a claimant's medical conditions to the VE in his hypothetical. As the *Webb* court noted,

> [t]he vocational expert's testimony is directed solely to whether, given a claimant's age, experience, and education, *along with the ALJ's assessment of*

> *what she "can and cannot do,"* there exist a significant number of employment opportunities for her in the regional and national economies. The vocational expert is not expected to evaluate the claimant's medical conditions in making this determination. Indeed, vocational experts are not required to have any medical training, so any evaluation of medical evidence they perform would be outside their area of expertise.

*Id*. at 633 (emphasis added).

Here, the relevant hypothetical question required the VE to assume an individual with Bowling's age, education and work experience and having the following restrictions:

> avoid full body vibration and temperature extremes, work, work around hazardous machinery, dangerous heights because of his diabetes . . . moderate versus marked limitations in his ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods . . . work in coordination or with proximity to others without being distracted by them, ability to complete a normal workday, work week, week without interruptions from psychologically based symptoms, at a consistent pace without unreasonable number and length of rest periods. Has moderate limitation in ability to interact appropriate with the general public and to get along with other coworkers without distracting them or exhibiting behavioral extremes. Nevertheless, which will meet the mental demands of unskilled work to include his ability to understand and carry out simple instructions, make judgments commencery with the functions of unskilled work, respond appropriate to supervision, co-workers and work situations and deal with changes in routine work setting.

[Tr., pp. 297-98] The VE relied upon these limitations when he opined that Bowling could perform work that exists in significant numbers in the national economy. This hypothetical question incorporated all the relevant restrictions and limitations regarding Bowling's ability to work. ALJ Kayser carefully evaluated the relevant medical evidence presented as well as Bowling's subjective claims and evidence relating to those claims. In doing so, the ALJ included the relevant limitations that were supported by the objective evidence. As discussed in *Webb*, such limitations were sufficient to impart the relevant medical information to the VE

and allowed the VE to offer an informed opinion regarding Bowling's ability to find employment.

Finally, Bowling requests that the Court remand this action back to the ALJ for consideration of additional evidence. Specifically, Bowling has moved for remand pursuant to Title 42 of the United States Code, Section 405(g) for consideration of the October 22, 2007, report from Reba Moore, a licensed psychologist. However, to obtain a "sentence-six remand," a claimant has the burden of showing that the evidence is both new and material. Additionally, the claimant must demonstrate good cause for his failure "to incorporate such evidence into the record in a prior proceeding." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006) (citing § 405(g)).

In the present case, Bowling has failed to satisfy his burden demonstrating that remand is appropriate. While the report from Ms. Moore constitutes "new" evidence under § 405(g) inasmuch as it post-dates the hearing decision of the ALJ, the Court cannot conclude that Bowling has shown good cause for his failure to incorporate this evidence into the record prior to the ALJ's decision.[1]

Bowling claims that good cause exists. In particular, Bowling contends that the record demonstrates that he needed the achievement/intellectual testing performed by Ms. Moore. However, he asserts was unable to obtain the testing prior to the submission of this case to the ALJ for review. He claims that he did not receive this testing because the state agency consultative examiner did not have the authority to perform achievement and/or intellectual

---

[1] Because Bowling has failed to satisfy the "good cause" test of section 405(g), the Court need not address whether Ms. Moore's report constituted material evidence.

testing and, at the time of the hearing, he was represented by a non-attorney who lacked the resources to arrange for this testing. The Sixth Circuit addressed a similar argument in *Cline v. Comm'r of Social Security*, 96 F.3d 146 (6th Cir. 1996). In that case, the claimant's primary argument that he had "good cause" for submitting supplemental evidence was that his legal representative was not sufficiently acquainted with him in order to determine his need for a psychiatric evaluation. According to his attorney, it was only at the hearing that he was able to determine that further evaluations might be useful. The court stated that counsel should have notified the ALJ of the claimant's need for a psychiatric examination as soon as he realized it at the hearing. Although his counsel had an entire month to notify the ALJ before the ALJ made his decision, the claimant's attorney elected to wait and submit the new evidence to the Appeals Council for the first time. The court upheld the district court's determination that this is clearly not good cause.

Here, the Court notes that neither Bowling nor his non-attorney representative raised this issue at the administrative hearing. While they were aware of that Bowling needed this testing, they did not seek to have the record remain open until such time as the type of evidence could be made a part of the record. If Bowling truly believed that additional testing was needed to support his claim of disability, he should have presented that evidence to the ALJ. Absent a demonstration of good cause to excuse the failure to incorporate this evidence in the original hearing, the Court cannot order a remand for the purposes of requiring the ALJ to consider new evidence. *See Willis v. Sec'y of Health and Human Servs.,* 727 F.2d 551 (6th Cir. 1984) (citing *Dorsey v. Heckler*, 702 F.2d 597, 604 (5th Cir. 1983) (noting that it is clear from the legislative

history of § 405(g) that this provision was enacted to limit the discretion of federal judges to remand for reconsideration of new evidence). Because the Court finds that Bowling has not satisfied his burden of establishing good cause for his failure to obtain the testing by Ms. Moore while the case was pending before the ALJ, remand of this action for further administrative consideration is not proper.

### IV. CONCLUSION

For the reasons discussed above, it is hereby

**ORDERED** as follows:

1. Bowling's Motion for Summary Judgment [Record No. 6] is **DENIED**;

2. The Commissioner's Motion for Summary Judgment [Record No. 9] is **GRANTED**; and

3. The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 24th day of April, 2008.



Signed By:
*Danny C. Reeves* DCR
United States District Judge